UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                          (973) 645-4693
BANKRUPTCY JUDGE                                                          Fax: (973) 645-2606

**NOT FOR PUBLICATION**

FILED
JAMES J. WALDRON, CLERK

**JUNE 6, 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

June 6, 2006

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Drew J. Bauman, Esq.
658 Ridgewood Road
Maplewood, New Jersey 07040
***Counsel for Plaintiff, Drew J. Bauman,***
***Guardian for Malvenia Wilder***

Albert Van-Lare, Esq.
45 John Street
Fourth Floor
New York, New York 10038
***Counsel for Defendant Randolph Young***

**Re:**   ***Bauman v. Young***
          **Adv. Pro. No.: 05-2619**

Dear Counsel:

     Before the Court is a motion for summary judgment filed by the Plaintiff, Drew J. Bauman, guardian for Malvenia Wilder, an "incapacitated person." The Debtor and Defendant, Randolph Young, filed

Page 2
June 6, 2006

opposition to the Plaintiff's motion for summary judgment. Because this Court concludes that genuine issues of material facts exist between the parties, the Plaintiff's motion for summary judgment must be denied.

### I.     Statement of Facts

Drew Bauman, Esq. currently serves as the guardian of the person and the property of Malvenia Wilder, an incapacitated person, and has served in that capacity since November 3, 2003. Ms. Wilder (hereinafter "Wilder") currently resides at St. Mary's Hospital Life Center in Orange, New Jersey. Previously, she resided at 128 Hollywood Avenue, East Orange, New Jersey. Wilder became record owner of this property by deed dated January 22, 1998. On or about May 27, 2004, the Adult Protective Services Program of Essex County filed a verified complaint seeking to have Wilder declared an incapacitated person as the result of unsoundness of mind and granting to an appropriate guardian, letters of guardianship over the person and property of Wilder. Simultaneous with the filing of the verified complaint, the Adult Protective Services filed a certification of Jamie Roberts dated May 27, 2004 indicating that Wilder had been in the care of Adult Protective Services since April 14, 2004 when she was referred to their office by the East Orange Crisis Center.

The following is a summary of the facts submitted by the Plaintiff. The Defendant/Debtor Randolph Young first met Wilder when he became a tenant at the property she owned located at 128 Hollywood Avenue (hereinafter the "Property"). Prior to becoming a tenant at the Property, Wilder had never met Young. Wilder and Young do not have any familial relationship; however, within five months after first meeting Wilder, Young assumed control of the financial affairs of Wilder pursuant to a power of attorney dated December 10, 2002. Simultaneously with the execution of the power of attorney in favor of Young, Wilder also executed a last will and testament naming Young as her primary beneficiary.[1]

At some time prior to November 11, 2003, Young contacted Emmanuel Abongwa, Esq., about transferring the Property owned by Wilder to him. On at least two occasions, Young represented to Abongwa that he was related to Wilder and that she wished to transfer the Property to him. Moreover, Young represented to Abongwa that there were no liens or mortgages already existing on the property. Abongwa prepared a deed transferring the Property from Wilder to Young for consideration of $1.00. Wilder was given a life estate in the Property. Young allegedly secured the services of legal counsel, arranged for such services to be provided and paid for the legal services involving the transfer of the Property. Wilder had no independent representation involving the transfer of title to the Property from her to Young. According to the Plaintiff, the transfer of the Property left Wilder without any assets other than social security benefits and a small pension.

---

[1] The secondary beneficiary was Dorothy Jackson, a former live in girlfriend of Young.

Page 3
June 6, 2006

Several months later, on or about March 26, 2004, Wilder revoked her power of attorney which gave control of her affairs to Young. Approximately two months later, the Adult Protective Services of Essex County filed a verified complaint seeking to have Wilder declared an incapacitated person as the result of unsoundness of mind and granting "letters of guardianship" to an appropriate guardian. Bauman was appointed guardian for Wilder and subsequently discovered the following additional facts. It is alleged by Bauman that first, Young was also named the beneficiary of three life insurance policies for Wilder. Second, Wilder has no assets. Her only income is social security benefits of $1,112.00 per month and a pension of $226.00 a month, both of which are paid directly to St. Mary's Hospital for her continuing care. Third, at the time of the transfer of the Property, there were two mortgages constituting liens on the Property in favor of PNC Bank. The first mortgage is in the amount of $25,766 and the second is in the amount of $28,661. Fourth, the Property has an estimated fair market value of $132,500; Young valued the Property in his voluntary petition at $180,000.

Bauman also conducted an investigation regarding Wilder's personal affairs and in particular, the transactions involving Young. In interviewing Wilder, Bauman claims that Wilder was "unable to provide [him] with general current information or personal information"; nonetheless, Wilder informed Bauman that Young was "only a tenant who resided at her house. She further stated that she did not give her house to Randolph Young. She indicated that Mr. Young was supposed to help her with her finances." Bauman also interviewed Abongwa, the attorney who prepared the deed transferring title from Wilder to Young. According to Abongwa, Young represented that he was Wilder's great nephew. Bauman contends that in his deposition Young "acknowledged that he had no family relationship with Wilder. In fact, he admitted that he first met Wilder in July, 2002 when he became a tenant at the Property and rented a room."

In support of his motion for summary judgment, the Plaintiff asserts the following three legal theories: 1) the transfer of Property from Wilder to Young for $1.00 constitutes "an unconscionable transaction without adequate consideration and the transaction must be rescinded with the subject property being returned for the benefit of its rightful owner"; 2) the Property transfer is subject to rescission "since the transaction served as a construction [sic] fraud because the consideration was so grossly inadequate as to shock the conscience of the court"; and 3) the Property transfer from Wilder to Young is the result of undue influence.

The Debtor/Defendant Randolph Young presents a radically different version of the facts. Most notably, Young submits that he and Wilder reached an agreement whereby Wilder would transfer the house to Young if Young agreed to take care of Wilder and her property. To that end, Young claims that he performed personal chores for Wilder (i.e., cleaning), maintained the home, paid all household bills, and oversaw Wilder's financial affairs. According to Young, Wilder's daughter testified at deposition that she was present when Wilder informed Young that she had decided to transfer the house to him in exchange for overseeing her personal and financial affairs. According to Young, "[t]here is nothing unconscionable about the transfer. It is not unusual . . . that people engage in transactions of this nature. The one dollar

Page 4
June 6, 2006

amount on the deed is a simple technical representation of a monetary amount. The consideration and value here are the responsibilities that Young performed on behalf of Wilder." Importantly, counsel for Young contends that "[t]here is no evidence anywhere and none certainly was adduced by [the Plaintiff] that Wilder did not agree to willingly transfer the property. Bauman merely presents speculative, presumptuous, and conclusive statements unsupported by any evidence."

Young further contends that Wilder was aware of the nature of the property transfer, and the transfer of the Property was not the result of undue influence, fraud, or oppression. In fact, this same type of transaction was how Wilder became owner of the Property; she was given the Property by her aunt for the same consideration. Moreover, Young claims that Abongwa, the attorney who prepared the deed of transfer, was a disinterested attorney representing Wilder in the transaction (Young claims that Wilder directed him to consult the services of Abongwa) and was paid "on behalf of Wilder by Young from Wilder's own funds because Young was managing Wilder's financial affairs as an authorized power of attorney at that time." Young also submits that there is no evidence that Wilder was incapacitated *when the property was transferred*. Finally, Young does not deny referring to Wilder as his aunt. "Wilder refers to Young as nephew and Young refers to Wilder as aunt. This is a term of endearment between the two individuals."

Against this background, the Court will turn to its legal conclusions.

**II.    Discussion**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to the Bankruptcy Court under the Federal Rules of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056(c) (West 2004). At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." Knauss v. Dwek, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. See Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

The moving party must make an initial showing that there is no genuine issue of material fact. See Knauss, 289 F. Supp. 2d at 549 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." Cardenas v. Massey, 269 F.3d 251, 254-55 (3d Cir. 2001) (quoting Celotex

Page 5
June 6, 2006

Corp., 477 U.S. at 322). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Warner-Lambert Co. v. Teva Pharm. USA, 289 F. Supp. 2d 515, 520 (D.N.J. 2003) (quoting Anderson, 477 U.S. at 247-48). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. Furthermore, a material fact is determined by the substantive law at issue. See Crane v. Yurick, 287 F. Supp. 2d 553, 556 (D.N.J. 2003). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson, 477 U.S. at 248. A court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

Here, there are genuine issues of material fact warranting a denial of the summary judgment motion, including but not limited to: 1) whether Wilder was incapacitated at the time she transferred the Property to Young; 2) whether Wilder voluntarily transferred the Property to Young in exchange for his personal services; and 3) whether the transfer of Property was procured by undue influence. Compare In re Skewis' Will, 2 N.J. Super. 114, 118 (App. Div. 1949) ("What constitutes undue influence sufficient to invalidate a will is a question of law. But whether a will was procured by undue influence is a question of fact for the court, as is the truth or credibility of evidence introduced on such issue and the weight to be given thereto"). See also Lynch v. Clements, 24 N.J. Eq. 431 (Ch. Ct. 1874) (holding that the determination of whether undue influence occurred "must be decided by the application of sound principles and good sense to the facts of each given case"). Consequently, the Plaintiff's motion for summary judgment is hereby denied.

### III.   Conclusion

Based upon the foregoing, the Plaintiff's motion for summary judgment is hereby denied.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

s/   **Donald H. Steckroth**

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure